IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JORDAN ALEXANDER BROOKS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-21-1901 |
| GAIL WATTS, *Director*, and | * | |
| SGT. A. DUPREE, *Correctional Officer*, | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

Pro se Plaintiff Jordan Alexander Brooks brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants Gail Watts ("Director Watts"), Director of Baltimore County Detention Center ("BCDC"), and Sergeant A. Dupree ("Sgt. Dupree"), BCDC Correctional Officer. Compl., ECF No. 1. Mr. Brooks asserts a violation of his constitutional rights based on Defendants' alleged use of excessive force during his pretrial detention, as well as the unsanitary conditions at BCDC. *Id.* at 2-3. He seeks monetary damages. *Id.* at 4.

On October 16, 2021, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Def.'s Mot., ECF No. 12. Mr. Brooks did not oppose the motion.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion, construed as a Motion for Summary Judgment, will be granted.

## BACKGROUND

Mr. Brooks states that at 9:48 p.m. on July 7, 2021, he was sitting in his cell with his cellmate when he observed Sgt. Dupree, and Correctional Officers Owoeye, and Ayodele, going cell by cell and conducting security checks. Compl. at 2. Sgt. Dupree and the Officers entered Mr. Brooks' cell. *Id.* Officer Owoeye lifted Mr. Brooks' mattress and picked up two pens. *Id*. at

2-3. Mr. Brooks attempted to grab the pens and Sgt. Dupree told Mr. Brooks to put his hands behind his back. *Id*. at 3. Mr. Brooks told the Officers: "you can't take us nowhere because we are on quarantine." *Id*. According to Mr. Brooks, Sgt. Dupree then pepper sprayed him on the side of his face, put him in handcuffs, and escorted him out of his cell. *Id*. Mr. Brooks further alleges that Sgt. Dupree pepper sprayed him again and punched and elbowed him in the face and head. *Id*.

After 10 minutes, medical staff evaluated Mr. Brooks and returned him to his cell "with pepper spray still burning [his] face, head, and neck." *Id*. Mr. Brooks claims that Officers Owoeye and Ayodele "forc[ed] him to go back inside a[] pepper sprayed cell after [he and his cellmate] tested positive for Covid 19," and that they were not allowed to shower for 96 hours. *Id*. Mr. Brooks also states that their pod was unsanitary with a buildup of trash. *Id*.

According to Defendants, Mr. Brooks told Sgt. Dupree "I will fuck you up" and aggressively moved towards him. Incident Report, ECF No. 12-6 at 2. Sgt. Dupree then pepper sprayed and handcuffed Mr. Brooks. *Id.* After Mr. Brooks was escorted out of the cell, he attempted to pull away, and Sgt. Dupree "had to use downward force placing him on the ground until control was gained." *Id*. In addition, because Mr. Brooks' cellmate "started attacking staff," another Correctional Officer, Officer Reese, had to deploy pepper spray. *Id*. Both Mr. Brooks and his cellmate were treated by a nurse for decontamination of pepper spray. *Id*. As a result of the incident, Officer Ayodele sustained injuries to his forehead and Officer Owoeye injured his wrist and broke his eyeglasses. Serious Incident Report, ECF No. 12-7 at 2.

When interviewed during the investigation of the incident, Mr. Brooks had no comment. Incident Report at 2-3. Mr. Brooks' cellmate stated that Mr. Brooks did not threaten the Officers. *Id.* at 3. Following a disciplinary hearing on July 30, 2021, Mr. Brooks was found guilty of

interfering with correctional staff, threatening bodily harm to any person, failing to obey the order of a correctional officer, and cursing or abusing a correctional officer, employee, or inmate. *Id.* at 2-3. Mr. Brooks waived his right to appeal the decision and did not file a grievance action. *Id.* at 3; Compl. at 2. He claims that he asked to file a grievance but was not given a grievance form. Compl. at 2.

## STANDARD OF REVIEW

Complaints by pro se litigants are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to their motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) (treating defendant's motion as a motion for summary judgment when defendant captioned the motion "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment," and submitted affidavits and other materials with the motion). Summary judgment motions are granted when the moving party shows that there is no genuine issue of material fact, therefore entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material" fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The district court must view facts in the light most favorable to the nonmoving party, including drawing all "justifiable inferences" in favor of that party. *Id.* at 255.

ANALYSIS

Construed liberally, Mr. Brooks' Complaint alleges a violation of the constitutional guarantee against cruel and unusual punishment. This alleged violation can be parsed further into two claims: a claim for excessive force and a conditions of confinement claim based on the unsanitary environment at BCDC.

At the time of the incident giving rise to this case, Mr. Brooks was a pretrial detainee in BCDC. Def.'s Mot. Mem., ECF No. 12-1 at 1. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that the Due Process Clause of the Fourteenth Amendment applies to an individual's claims where no formal adjudication of guilt has occurred); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992) (analyzing plaintiff's claim under the Due Process Clause of the Fourteenth Amendment where the plaintiff was a pretrial detainee and not a convicted prisoner at the time of the alleged incident). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Indeed, "[d]ue process rights of a pretrial detainee are *at least* as great as the eighth amendment protections available to a convicted prisoner." *Hill*, 979 F.2d at 991 (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).

I.  **Excessive Force Claim**

In evaluating an excessive force claim, courts must inquire whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). A claim of excessive force does not require proving subjective intent—a pretrial detainee must only show "the force purposely or knowingly used

against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Courts may consider the following in deciding whether an individual used unreasonable force: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 397; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, Mr. Brooks has not shown that the force used by Sgt. Dupree was objectively unreasonable. Mr. Brooks admits that he was noncompliant when the Officers searched his cell; Mr. Brooks attempted to grab his pens from the Officers after they had been confiscated, and Mr. Brooks did not put his hands behind his back when asked to do so by Sgt. Dupree. Compl. at 3. Sgt. Dupree deployed his pepper spray the first time only after his attempts to defuse the situation with verbal commands failed. *Id.*; Incident Report at 2[1]. Mr. Brooks alleges he was pepper sprayed a second time and hit by Sgt. Dupree. Compl. at 3. The exhibits provided by Defendants corroborate that pepper spray was deployed for a second time but only after a fight broke out and Mr. Brooks' cellmate attacked the Correctional Officers. Serious Incident Report at 2. Officers Ayodele and Owoeye suffered injuries that required medical treatment. *Id.* Mr. Brooks was evaluated by medical staff but does not appear to have suffered injuries other than discomfort from the pepper spray. Compl. at 3. Because Mr. Brooks has failed to raise a genuine dispute of material

---

[1] Defendants attached various exhibits supporting their motion but omitted any authenticating affidavit. Notwithstanding this omission (which, in other circumstances, could result in the court not considering them) is not fatal because the incident reports attached on their fact bear sufficient indicia of authenticity (Fed. R. Evid. 901(b)(4)), and the exhibits themselves are admissible as public records. Fed. R. Evid. 803(8)(a)(i) & (ii). Accordingly, I will consider them.

fact regarding Sgt. Dupree's evidence that the force used by Sgt. Dupree was limited to responding to Mr. Brooks' noncompliance and the altercation started by his cellmate, and because Mr. Brooks did not suffer serious injury from the force used, I conclude as a matter of law that any force used by Sgt. Dupree was applied in a good faith effort to maintain or restore discipline.  Thus, Defendants are entitled to summary judgment on Mr. Brooks' excessive force claim.

## II.     Conditions of Confinement Claim

Courts apply a different standard for analyzing conditions of confinement claims than for evaluating excessive force claims.  For conditions claims, courts use the Eighth Amendment's "deliberate indifference" standard.  *See Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) ("The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance."); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (explaining that in prison-conditions cases, a prison official must have a deliberate indifference state of mind as to health and safety).  The deliberate indifference standard consists of a two-pronged test, with the first prong being objective and the second prong being subjective: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.

1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

To establish the subjective prong and show the prison official had a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson*, 878 F.3d at 107. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Here, there are no disputed evidentiary facts that establish Mr. Brooks suffered a serious or significant injury resulting from the conditions in his cell. Mr. Brooks does not make any such claims in his Complaint—he states in conclusory fashion that the environment at BCDC was "unsanitary"—and the materials accompanying Defendants' Motion do not contain evidence of any such injury. Compl. at 3; Def.'s Mot. Mem. at 6-8. Nor are there any facts that satisfy the second prong of the deliberate indifference test, that Sgt. Dupree knew Mr. Brooks faced a serious danger to his safety and did nothing to avert this danger. Compl. at 3; Def.'s Mot. Mem. at 6-8. Thus, because there is no genuine issue of material fact, summary judgment in favor of Defendants is warranted. Fed. R. Civ. P. 56(e)(2) & (3).

### III. Claims Against Director Watts

Lastly, Mr. Brooks makes no direct allegations against Director Watts. Construing the Complaint liberally, it appears that Mr. Brooks seeks to hold Director Watts liable for the actions of BCDC employees. It is well established, however, that the doctrine of respondeat superior does

not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Mr. Brooks has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Director Watts' subordinates. As discussed above, Mr. Brooks failed to show that his constitutional rights were violated. Accordingly, he has necessarily failed to demonstrate that Director Watts authorized or was indifferent to any such violation. Mr. Brooks' assertion regarding this single event does not demonstrate a pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983

liability, however, only in those situations in which there is a history of widespread abuse."). Therefore, Director Watts is entitled to summary judgment on this ground as well.

## CONCLUSION

Defendants' Motion, construed as a Motion for Summary Judgment, is granted. A separate Order follows.

__July 13, 2022_____  
Date

_____/S/_____  
Paul W. Grimm  
United States District Judge